Christian T. Zabilowicz (SRN 355341)
5RB,
5 Gray's Inn Square,
London, WC1R 5AH,
United Kingdom
Telephone: (747) 320-7532
Email: chriszabilowicz@5rb.com

*Attorney for Applicant HUMAN ENGINE, Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>HUMAN ENGINE, LTD.,<br><br>Applicant.<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings | Miscellaneous Case No.<br><br>**HUMAN ENGINE LTD'S MEMORANDUM IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

MEMORANDUM OF LAW IN SUPP. OF HUMAN ENGINE LTD'S *EX PARTE* § 1782 APPLICATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………... ii

INTRODUCTION……………………………………………………………….................. 1

FACTUAL BACKGROUND……………………………………………........................ 2

    A. HUMAN ENGINE is a Leading Boutique Management Consultancy……….. 2

    B. HUMAN ENGINE Defamed by Anonymous False and Defamatory Review on Glassdoor.co.uk……………………………………………………………… 3

    C. HUMAN ENGINE Asked Glassdoor to Remove the Defamatory Review, But Glassdoor Refused………………………………………………………….. 4

    D. This Application Seeks Evidence Necessary for HUMAN ENGINE to Proceed with its English Lawsuit Against the Anonymous Person Who Posted the Defamatory Review……………………………………………………….. 5

ARGUMENT………………………………………………………………………………….. 5

I.    28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings……. 5

II.    HUMAN ENGINE's Application Easily Satisfies Section 1782's Statutory Requirements……………………………………………………………………... 7

III.    The Supreme Court's Discretionary *Intel* Factors All Weigh in Favor of Granting HUMAN ENGINE's Application………………………………………………… 8

    A. The First *Intel* Factor is Satisfied: Glassdoor Will Not be a Participant in or Party to the Foreign Proceeding and Therefore the Foreign Tribunal Cannot Compel Glassdoor to Provide Discovery………………………………………... 8

    B. The Second *Intel* Factor is Satisfied: The English Court Will Accept, Not Reject, Assistance from Discovery Under Section 1782……………………... 8

    C. The Third *Intel* Factor is satisfied: HUMAN ENGINE's Request Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions or Policies of the United States………………………………………………………….......... 10

    D. The Fourth *Intel* Factor Is Satisfied: HUMAN ENGINE's Request Is Not Unduly Burdensome…………………………………………………………… 11

CONCLUSION……………………………………………………………………………….. 13

**TABLE OF AUTHORITIES**

**Cases** Page(s)

*ZURU, Inc. v. Glassdoor, Inc.*,
 614 F. Supp.3d 697 (N.D. Cal. July 11, 2022) ……………………………… 2, 5, 6, 10

*IS Prime Ltd. v. Glassdoor, Inc.*,
 No. 21-mc-80178, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021) ……..… 2, 9, 10, 12

*In re Legatum*,
 No. 21-mc-80032, 2021 WL 706436 (N.D. Cal. Feb. 23, 2021).................. 2, 9, 10, 12

*In re Ex Parte Application of Digital Shape Techs., Inc.*,
 No. 16-mc-80150, 2016 WL 3913670 (N.D. Cal. July 20, 2016)……….. 2, 11, 12, 13

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
 No. 16-mc-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ………. 2, 11, 12, 13

*IPCom GMBH & Co. KG v. Apple Inc.*,
 61 F. Supp. 3d 919 (N.D. Cal. 2014)…………………………………………………. 6

*In re Apple Retail UK Ltd.*,
 No. 20-mc-80109, 2020 WL 3833392 (N.D. Cal. July 8, 2020)…………....... 6, 9, 13

*In re Republic of Ecuador*,
 No. 10-mc-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)……………....... 6

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*,
 16 F.3d 1016 (9th Cir. 1994) ……………………………………………………..... 7

*In re Application for Appointment of a Comm'r re Req. for Judicial Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*,
 No. 11-cv-80136, 2011 WL 2747302 (N.D. Cal. July 13, 2011)…………….. 2, 12, 13

*Siemens AG v. W. Digital Corp.*,
 No. 13-cv-1407, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ……………………… 9

*In re Varian Med. Sys. Int'l AG*,
 No. 16-mc-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) …………...…… 7, 9

*Heraeus Kulzer GmBH v. Biomet, Inc.*,
 633 F.3d 591 (7th Cir. 2011)…………….................................................……9

*Qualcomm, Corp. v. Apple, Inc.*,
   No. 24-mc-80019, 2024 WL 536355 (N.D. Cal. Feb. 9, 2024)…………………….... 9

*In re Application of Credit Suisse Virtuoso*,
   No. 21-mc-80308, 2022 WL 1786050 (N.D. Cal. Jun. 1, 2022) ………………..…… 9

*In re Application of JSC Comm. Bank Privatbank*,
   No.21-mc-80216, 2021 WL 4355334 (N.D. Cal. Sept. 24, 2021)………………….... 9

*South Carolina Co. v. Assurantie N.V.*
   [1987] 1 A.C. 24 (HL)…………………………………………………………….. 9

*BHP Group (UK) Ltd & Anor v. PGMBM Law Ltd*
   [2025] EWHC 3153 (TCC) …………………………………………………….. 9

*Hey, Inc. v. Twitter, Inc.*,
   No. 22-mc-80034, 2022 WL 1157490 (N.D. Cal. 19 Apr., 2022)…………,,,,,,……..12

**Statutes**

28 U.S.C. § 1782 ..…………………………..………………………………….... 5, 6, 7

**INTRODUCTION**

Applicant HUMAN ENGINE, Ltd. (hereinafter "HUMAN ENGINE") respectfully submits this Memorandum of Points and Authorities in support of its *ex parte* Application for an Order pursuant to 28 U.S.C. § 1782 granting leave to obtain limited discovery from Glassdoor, LLC ("Glassdoor") for use in proceedings in England and Wales. Specifically, HUMAN ENGINE seeks authorization to issue a subpoena requiring Glassdoor to produce certain documents sufficient to identify the individual who authored a false and defamatory review posted on Glassdoor.co.uk (which is operated by Glassdoor) for use in defamation proceedings in England and Wales.

The review contains serious allegations of sexism, racism, mistreating clients, corrupt promotion practices and fostering a toxic work environment. As explained below, these allegations have caused significant harm to HUMAN ENGINE's reputation and give rise to a *prima facie* claim in defamation in England and Wales. The discovery sought is critical to HUMAN ENGINE's ability to identify the anonymous author and pursue its defamation claim in English proceedings. Because the identifying information is held by Glassdoor in the United States and lies beyond the jurisdictional reach of the English courts, Section 1782 provides the only mechanism to obtain it. Without this limited discovery, HUMAN ENGINE will be unable to determine the reviewer's identity, brings its claim and vindicate its reputation. Put simply, this Application represents HUMAN ENGINE's only means of defending and restoring its good name.

This Application easily satisfies the statutory requirements of Section 1782 and the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). With respect to the three statutory requirements: (1) Glassdoor "resides or is found" within this district because it is headquartered and has its principal place of business in San Francisco County; (2) the discovery sought is "for use" in proceedings in the High Court of England and Wales, a foreign tribunal; and (3) HUMAN ENGINE, as the claimant (plaintiff) in the English proceedings, is an "interested

MEMORANDUM OF LAW IN SUPP. OF HUMAN ENGINE LTD'S *EX PARTE* § 1782 APPLICATION

person". In addition, as explained below, each of the *Intel* discretionary factors favors authorizing the requested discovery.

Courts have routinely granted Section 1782 relief in similar circumstances, including where applicants sought information from Glassdoor to identify anonymous reviewers for use in foreign defamation (or similar) proceedings. *See, e.g., ZURU, Inc. v. Glassdoor, Inc.*, 614 F. Supp.3d 697, 709 (N.D. Cal. July 11, 2022) (granting Section 1782 discovery from Glassdoor to identify the author of an anonymous review for use in contemplated defamation proceedings in New Zealand); *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4 (N.D. Cal. Dec. 13, 2021) (granting Section 1782 discovery from Glassdoor to identify the author of an anonymous review for use in a contemplated "malicious falsehood" claim in England); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021) (granting discovery from Glassdoor under Section 1782); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (same); *In re Ex Parte Application of Digital Shape Techs., Inc.*, No. 16-mc-80150, 2016 WL 3913670, at *3 (N.D. Cal. July 20, 2016) (same)*; In re Application for Appointment of a Comm'r re Req. for Judicial Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. 1782*, No. 11-cv-80136, 2011 WL 2747302, at *5 (N.D. Cal. July 13, 2011) (same; WordPress.com).

Accordingly, the Court should grant HUMAN ENGINE's Application.

## FACTUAL BACKGROUND

### A. HUMAN ENGINE is a Leading Boutique Management Consultancy

Applicant HUMAN ENGINE is a leading management consultancy based in the United Kingdom with specialisms in strategy, change, digital, commercial, procurement and projects. (Noble Decl. ¶ 3.)  Established in 2018 by an experienced team of former senior local government leaders, HUMAN ENGINE has since built a strong reputation for delivering transformative solutions to local authorities, central government departments and National Health Service ("NHS") organizations across the United Kingdom. (*Id.*)

HUMAN ENGINE's work is grounded in improving outcomes for customers and communities through the transformation of strategies, operations and organizational cultures. (Noble Decl. ¶ 4.) This approach has earned HUMAN ENGINE national recognition, including being named by the Financial Times as one of the UK's leading management consultancies and being ranked among the top 25 firms in Organizational Change, Sustainability, and People & Performance. (*Id*.) HUMAN ENGINE's mission is "to help individuals and organizations do the best work of their lives." (*Id*.)

HUMAN ENGINE is a small but fast-growing firm, employing 12 professionals. (Noble Decl. ¶ 5.) Its success depends heavily on trust, repeat instructions from satisfied clients and the recruitment of highly capable individuals in a competitive market. (*Id*.) Any harm to its reputation has a direct and measurable impact on its ability to win new work, maintain client relationships and attract and retain the talent necessary to continue its growth. (*Id*.)

### B. HUMAN ENGINE Defamed by Anonymous False and Defamatory Review on Glassdoor.co.uk

On 4 March 2025, an anonymous person posted a false and disparaging review on Glassdoor.co.uk (which is operated by Glassdoor) about HUMAN ENGINE, purporting to have been written by a "Former employee". (Greenberg Decl. ¶¶ 4-7 & Ex. 1.) A copy of the review is attached as **Exhibit 1** to the Greenberg Declaration (the "Review"). The Review alleges that HUMAN ENGINE and its leadership: (i) "[lack] basic management competence" and "basic professionalism", "know nothing", and "throw [their employees] in the deep end and watch them drown"; (ii) mistreat clients and disparage them, including by "badmouthing" and "swearing" about them; (iii) engage in dishonest and unfair business practices, such as only promoting employees that "worship" senior leadership and favoring senior leadership to the detriment of junior employees; and (iv) tolerate and normalize discriminatory behavior in the workplace, including by being "casually sexist" toward women and "racist without even realising it". (Greenberg Decl. ¶ 9.)

As explained in the Greenberg Declaration, the imputations contained in the Review give rise to an actionable claim for defamation in England by HUMAN ENGINE against the reviewer. (Greenberg Decl. ¶ 8-10.) The Review makes serious allegations against HUMAN ENGINE, including allegations that impugn the honesty and fairness of the company's business practices (such as its promotion practices), its treatment of employees (including allegations of sexism and racism) and its treatment of clients (including "badmouthing" and "swearing" about them). (*Id*. ¶ 9.) English courts have recognised that imputations of this nature are precisely the kind that give rise to a *prima facie* claim in defamation. (Greenberg Decl. ¶¶ 8–9.) Further, because the allegations contained in the Review are false, the defense of "truth" would fail, as would any other defense under English defamation law. (Greenberg Decl. ¶ 10.)

### C. HUMAN ENGINE Asked Glassdoor to Remove the Defamatory Review, But Glassdoor Refused

On September 17, 2025, the law firm Cohen Davis Solicitors ("Cohen Davis"), which represent HUMAN ENGINE in England, wrote to Glassdoor requesting that it remove the defamatory Review. (Greenberg Decl. ¶ 12 & Ex. 5.) In support of its request, Cohen Davis explained how the Review is defamatory and how it violated Glassdoor's Terms of Use. On October 10, 2025, Glassdoor responded, refusing to take action against the defamatory Review. (*Id*. ¶ 13 & Ex. 6.)

Upon receiving that response, Cohen Davis considered following up with Glassdoor to request, at a minimum, the disclosure of the anonymous reviewer's identity so that action could be taken against the person who posted the Review directly. (*Id*. ¶ 14.) However, Cohen Davis concluded that such an effort would be futile and unnecessarily increase its client's costs—Glassdoor stated in its response that "it would not take additional steps in this instance (beyond existing practices)" and, indeed, Glassdoor maintains a published policy of refusing to identify anonymous reviewers when an employer requests disclosure or threatens legal action. (14 & Ex. 7.)

- 4 -
MEMORANDUM OF LAW IN SUPP. OF HUMAN ENGINE LTD'S *EX PARTE* § 1782 APPLICATION

### D. This Application Seeks Evidence Necessary for HUMAN ENGINE to Proceed with its English Lawsuit Against the Anonymous Person Who Posted the Defamatory Review

HUMAN ENGINE intends to commence defamation proceedings in the High Court of England and Wales against the individual who authored the Review. (Greenberg Decl. 11.) In order to pursue that claim, HUMAN ENGINE must first obtain identifying details of the reviewer, including their name, email address and IP information. (*Id.*) Glassdoor is the sole custodian of this information. However, Glassdoor has stated that it will not take further action regarding the Review and it has a published policy of refusing to identify anonymous reviewers when requests are made or legal action is threatened. (*Id.* ¶¶ 14-15 & Ex. 7.) Accordingly, a court order compelling third-party discovery from Glassdoor is required for HUMAN ENGINE to proceed with its lawsuit.

## ARGUMENT

### I. 28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings

Under 28 U.S.C. § 1782, titled "Assistance to foreign and international tribunals and to litigants before such tribunals," a district court may order the production of documents for use in a proceeding in a foreign tribunal. Section 1782 authorizes federal district courts to make an order for discovery where three requirements are satisfied: (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by an interested person. 28 U.S.C. § 1782(a). "Once § 1782(a)'s three prerequisites are met, the statute gives district courts wide latitude to determine 'what, if any, [judicial] assistance is appropriate.'" *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 703 (N.D. Cal. 2022) (quoting *Intel*, 542 U.S. at 266).

If the court determines that these requirements are satisfied, it must then consider the four discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (1) whether the person from whom discovery is sought

is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but allows discovery for use in foreign proceedings that have not yet commenced. *Intel*, 542 U.S. at 258, 259.

A district court's discretion is guided by the twin aims of § 1782—providing efficient assistance to participants in international proceedings and encouraging foreign countries to provide reciprocal assistance to U.S. courts. *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004). "The statute is generous and reflects a hope that if federal courts assist with foreign litigation, foreign courts will do the same when the tables are turned." *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 703 (N.D. Cal. 2022). Notably, "[t]he party seeking discovery need not establish that … United States law would allow discovery in an analogous domestic proceeding." *In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (citing *Intel*, 542 U.S. at 247, 261–63).

"Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an ex parte basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (quoting *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014); *see also In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing

party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application ex parte." *In re: Ex Parte Application Varian Med. Sys. Int'l AG, Applicant*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

Unless the district court orders otherwise, the discovery authorized by the court must be obtained in accordance with the Federal Rules of Civil Procedure.  28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994).

## II. HUMAN ENGINE's Application Easily Satisfies Section 1782's Statutory Requirements.

This Application clearly satisfies Section 1782's statutory requirements.

**First**, HUMAN ENGINE seeks discovery from a legal person that resides within this district.  Glassdoor resides within this district because it is headquartered in San Francisco County, California, which is in this district.  Glassdoor's own website provides that its headquarters is in San Francisco County, California, and further states that its users must "agree that all [] subpoenas and discovery proceedings arising from such subpoenas shall be issued from, brought and resolved exclusively in … the federal courts in the Northern District of California."  *See* Glassdoor, *How Do I Serve Legal Documents on Glassdoor?*, Glassdoor Help Center (last visited Jan. 12, 2026), https://help.glassdoor.com/s/article/How-do-I-serve-legal-documents-on-Glassdoor?language=enUS ("Glassdoor's headquarters (where we keep our records) is in San Francisco County, California."); Glassdoor, *Terms of Use* § 13 (last visited Jan. 12, 2026), https://www.glassdoor.com/about/terms.htm; Greenberg Decl. ¶ 3 & Ex. 2.  Accordingly, Glassdoor resides or is found in this district for Section 1782 purposes.

**Second**, HUMAN ENGINE seeks discovery "for use" in a foreign proceeding because it intends to use the identifying information obtained from Glassdoor in pending

and contemplated defamation proceedings in the High Court of England and Wales—a foreign tribunal. (Noble Decl. ¶ 15; Greenberg Decl. ¶ 11.) *See Intel*, 542 U.S. at 243 (confirming that proceedings need not be pending or imminent, as long as they are within reasonable contemplation). Accordingly, this requirement is satisfied.

**Third**, as the claimant in the English civil proceedings, HUMAN ENGINE is "[n]o doubt … included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. As such, the final statutory requirement is satisfied.

### III. The Supreme Court's Discretionary *Intel* Factors All Weigh in Favor of Granting HUMAN ENGINE's Application

All four discretionary *Intel* factors favor granting HUMAN ENGINE's Application.

#### A. The First *Intel* Factor is Satisfied: Glassdoor Will Not be a Participant in or Party to the Foreign Proceeding and Therefore the Foreign Tribunal Cannot Compel Glassdoor to Provide Discovery.

The first *Intel* factor—whether the respondent will be a participant in or a party to the foreign proceeding—favors granting discovery. When the Respondent is participating in the foreign proceeding, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264. By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Here, Glassdoor will not be a participant in or a party to the foreign proceedings against the anonymous reviewer. Accordingly, Glassdoor will be outside of the English High Court's jurisdictional reach, and the English Court will be unable to order discovery of the anonymous reviewer's identity. Thus, the first *Intel* factor favors authorizing the requested discovery

#### B. The Second *Intel* Factor is Satisfied: The English Court Will Accept, Not Reject, Assistance from Discovery Under Section 1782.

In considering the second *Intel* factor, courts should "err on the side of permitting discovery". *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (citing *Heraeus Kulzer GmBH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (reversing denial of Section 1782 application because "there is nothing to suggest that the [foreign] court would be affronted by [plaintiff's] recourse to U.S. discovery or would refuse to admit any evidence")). Where there is no "'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782'", this factor weighs in an applicant's favor. *Siemens AG v. W. Digital Corp.*, No. 13-cv-1407, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013); *accord In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020).

District courts have repeatedly granted requests for discovery under Section 1782 for use in foreign litigation in England. *See, e.g., Qualcomm, Corp. v. Apple, Inc.*, No. 24-mc-80019, 2024 WL 536355, at *1 (N.D. Cal. Feb. 9, 2024); *In re Application of Credit Suisse Virtuoso*, No. 21-mc-80308, 2022 WL 1786050, at *10-11 (N.D. Cal. Jun. 1, 2022); *IS Prime Limited v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4 (N.D. Cal. Dec. 13, 2021); *In re Application of JSC Comm. Bank Privatbank*, No.21-mc-80216, 2021 WL 4355334, at *1-4 (N.D. Cal. Sept. 24, 2021); *In re Ex Parte Application of Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021). Further, as explained in the Declaration of Paul Greenberg, English courts are receptive to receiving evidence from U.S. courts under Section 1782 and would be so receptive in this matter. (Greenberg Decl. ¶ 16-19.) Indeed, the House of Lords in *South Carolina Co. v. Assurantie N.V.* [1987] 1 A.C. 24, 42 (HL) expressly held that a party does nothing wrong "by seeking to exercise a right potentially available to them under the Federal law of the United States [under 28 U.S.C. § 1782]," and such applications do not "in any way depart[] from, or interfere[] with, the procedure of the English Court". (*Id*. ¶ 17 & Ex. 8.) Other English courts are in accord, with the English High Court stating very recently in *BHP Group (UK) Ltd & Anor v. PGMBM Law Ltd* [2025] EWHC 3153 (TCC) that parties in England are "entitled to

make use" of the Section 1782 procedure, including where a party obtains discovery that would otherwise be unavailable in England. (*Id.* ¶ 18 & Ex. 9.)

Accordingly, the second *Intel* factor also favors authorizing the requested discovery, especially since it is clear that an English court would readily accept evidence obtained by this Application. (*Id*. ¶¶ 16-19.)

### C. The Third *Intel* Factor is Satisfied: HUMAN ENGINE's Request Does Not Attempt to Circumvent Foreign Proof-Gathering Restrictions or Policies of the United States.

The third *Intel* factor asks whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. This factor is distinct from the question of whether discovery would be allowed in the foreign jurisdiction. *See Intel*, 542 U.S. 241, 261 (2004) ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782(a).").

HUMAN ENGINE's Application does not attempt to evade English law or public policy. (Greenberg Decl. ¶ 19.) HUMAN ENGINE's counsel in England is unaware of any restrictions under English law on proof-gathering that would prohibit obtaining the discovery sought through this Application. (*Id*.) Moreover, the requested discovery would not circumvent any policies of the United States. To the contrary, U.S. district courts routinely grant applications under Section 1782 authorizing discovery from Glassdoor for documents identifying an anonymous author of a review for use in contemplated foreign defamation (or similar) proceedings, without finding that such discovery circumvents U.S. policies. *See, e.g., ZURU, Inc.*, 614 F. Supp. 3d 709 (authorizing § 1782 discovery to identify the author of an anonymous Glassdoor review for use in contemplated defamation proceedings in New Zealand); *IS Prime Ltd.*, 2021 WL 5889373, at *4 (same, for a contemplated malicious falsehood claim in England); *In re Legatum*, 2021 WL 706436, at

*3 (granting discovery from Glassdoor under Section 1782); *Digital Shape Techs., Inc.*, 2016 WL 5930275, at *2 (same); *In re Ex Parte Application of Digital Shape Techs., Inc.*, 2016 WL 3913670, at *3 (same).

The Ninth Circuit recently made clear that a "relatively permissive approach" should be adopted at the Section 1782 application stage where, as here, the record contains no indication that the person whose identity is sought is a U.S. citizen or is present in the United States. *In re Ex Parte Application of Gregory Gliner*, 133 F.4th 927, 935 (9th Cir. 2025) (reversing the denial of discovery under Section 1782 from a California-based company for use in foreign defamation proceedings because "no evidence in the current record suggests the implication or infringement of any person's First Amendment rights"). That is precisely the situation here. The Application seeks to identify the author of an anonymous Glassdoor review in which the reviewer self-identifies as a former employee of HUMAN ENGINE. (Greenberg Decl. ¶ 3 & Ex. 1.) There is no evidence that this person is a U.S. citizen or is present in the United States. To the contrary, the record demonstrates that HUMAN ENGINE is a United Kingdom-based company with no international offices, no current or former employees based outside the UK, and an exclusively UK client base. (Noble Decl. ¶ 3.) Given these facts, the most reasonable inference is that the reviewer is likewise based in the United Kingdom, not the United States. In the absence of any indication that the anonymous author of the Review is a U.S. citizen or is present in the United States, the First Amendment concerns do not arise. As the Ninth Circuit explained, where "no evidence suggests that the … author is a U.S. citizen or is present in the United States," discovery under § 1782 should be authorized, leaving "any parties whose First Amendment rights may be affected to contest the subpoenas by filing a motion to quash or modify them." *In re Ex Parte Application of Gregory Gliner*, 133 F.4th, 935. Accordingly, the third *Intel* factor weighs heavily in favor of granting HUMAN ENGINE's Application.

### D. The Fourth *Intel* Factor Is Satisfied: HUMAN ENGINE's Request Is Not Unduly Burdensome.

The last *Intel* factor concerns whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. As relevant here, U.S. courts have often found that this factor weighs in favor of granting a Section 1782 application in circumstances where the applicant seeks limited discovery from a website operator to reveal the identity of a person who used the website to disparage another. *See, e.g., Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (N.D. Cal. 19 Apr., 2022) (granting Section 1782 application subpoena seeking "documents identifying the user(s) of the three [Twitter] accounts; names and addresses of credit card holders registered on the accounts; and access logs for the dates the tweets in question were posted," and holding that the "discovery is appropriately tailored to documents and information identifying the individual(s) responsible" for the alleged wrongful conduct); *IS Prime Ltd.*, 2021 WL 5889373, at *3-4 (granting application for discovery from Glassdoor seeking "documents identifying or that could be used to identify the individual(s) who posted [allegedly defamatory] reviews"); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021) (similar; granting application for discovery from Glassdoor seeking documents reflecting "identifying information such as IP addresses" of persons who made allegedly disparaging posts); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (compelling Glassdoor to produce "[d]ocuments sufficient to show the email address and IP address of the user who posted [an allegedly defamatory review]" because (1) "[t]he email and IP addresses associated with the [] review are relevant to Petitioners' defamation claim based on that review" and (2) the request was not unduly burdensome); *In re Application for Appointment of a Comm'r*, 2011 WL 2747302, at *1, 5 (granting application for discovery from WordPress.com "to identify the individual(s) who authored an anonymous blog on WordPress.com's blog-hosting service" and explaining that (1) "[t]he information requested is relevant to [the applicant's] allegations [against the anonymous blogger] and the identity of [the anonymous blogger] is otherwise unattainable, given that the relevant

posts were made through WordPress.com's servers" and (2) "the request is not unduly intrusive or burdensome because it seeks to gather only identifying information for the accounts, such as the names and addresses of the users").

Here, HUMAN ENGINE's Application is limited in scope and seeks targeted discovery from Glassdoor only. Specifically, it requests information sufficient to identify the individual responsible for posting the defamatory Review. Information bearing on the reviewer's identity is directly relevant and indispensable to HUMAN ENGINE's ability to pursue its defamation claim in England. The Application does not seek Glassdoor's internal communications or similar categories of documents; rather, it is confined to information sufficient only to reveal the reviewer's name, email address and IP address. Courts have consistently found comparable, narrowly tailored discovery requests to be reasonable and not unduly burdensome. *See, e.g., Digital Shape Techs., Inc.*, 2016 WL 5930275, at *2; *In re Application for Appointment of a Comm'r*, 2011 WL 2747302, at *5; *In re Apple Retail UK Limited*, 2020 WL 3833392, at *4. Accordingly, the fourth *Intel* factor weighs in favor of granting HUMAN ENGINE's Application.

## CONCLUSION

Because the Application satisfies the Section 1782 statutory requirements and the *Intel* factors favor granting discovery, the Court should grant the Application and authorize the issuance of the subpoena attached to HUMAN ENGINE's Application as **Exhibit B**. A Proposed Order is attached to HUMAN ENGINE's Application as **Exhibit A**.

Dated: 2 February, 2026                    5RB

*/s/ Christian T. Zabilowicz*
Christian T. Zabilowicz
*Attorney for Applicant Human Engine, Ltd.*